■ In the Matter of the Claim of PATRICE LOMUSCIO, Appellant, v METROPOLITAN SUBURBAN BUS AUTHORITY, Respondent. [737 NYS2d 135] —Crew III, J.P. Appeal from a decision of the Workers' Compensation Board, filed March 21, 2000, which ruled that claimant has a partial disability caused by a November 1996 accident.

Claimant, a bus driver, sustained work-related injuries to her neck and back in 1993 and 1994, for which she lost intermittent time from work and received workers' compensation benefits. Following an MRI study performed in March 1995, claimant's treating neurologist, Charles Argoff, diagnosed her as suffering from a soft tissue injury with mild degenerative changes. Claimant apparently returned to work in or about August 1995 and, while not symptom free, managed to keep her pain under control with medication until August 1996, when she returned to Argoff complaining of increased neck discomfort. Thereafter, while operating a bus in November 1996, claimant reached above her head to change the destination sign, whereupon she heard a popping sound in her neck and began to experience excruciating pain. A subsequent MRI conducted in December 1996 revealed, according to Argoff, small disc herniations at all levels from C2 through C5-6 with mild spondylosis, together with mild right neuroforaminal stenosis at C5-6. In Argoff's view, the finding of neuroforaminal stenosis represented a significant change from the MRI previously performed in March 1995.

The matter proceeded to a hearing before a Workers' Compensation Law Judge (hereinafter WCLJ), who concluded that although claimant indeed suffered from a partial disability, such disability was the product of a "new accident" that had occurred in November 1996. As claimant had not filed a claim based upon a November 1996 accident, the WCLJ concluded that claimant was not entitled to continuing benefits. Claimant appealed, but the Workers' Compensation Board upheld the WCLJ's decision, finding that the record as a whole supported the WCLJ's conclusion that claimant suffered a new accident in November 1996, as opposed to an exacerbation of her prior work-related injuries. This appeal by claimant ensued.

"The [B]oard's expertise in delimiting what events are accidents and what events merely constitute exacerbation of prior injuries must be respected if there is ample evidentiary support for the finding * * *" (*Matter of Di Simone v Underwriters Adjusting Co.*, 91 AD2d 782, 782 [citation omitted]). Thus, as applied to the matter before us, if the Board's affirmance of the WCLJ's finding that claimant's partial disability resulted solely from a "new accident" that occurred in November 1996 is supported by substantial evidence in the record as a whole, we are bound by that factual determination even if the record contains evidence that could support a contrary conclusion.

In this regard, although the testimony offered by Argoff was

perhaps less than precise, his testimony as a whole certainly suggests that claimant's prior work-related injuries played a significant role in the partial disability found by the WCLJ and the Board. Contrary testimony was offered by Jerrold Gorski, the orthopedic surgeon who examined claimant on behalf of the carrier, who opined that claimant suffered an injury in November 1996 while attempting to change the destination sign on the bus that she was operating and that claimant's resulting partial disability was attributable to this new incident, not her prior work-related injuries. While the WCLJ and the Board certainly were free to credit Gorski's testimony over that offered by Argoff, it appears that the sole basis for the WCLJ's finding that claimant sustained a "new accident" in November 1996 was the December 1996 MRI study which, according to the WCLJ, revealed injuries that were not present prior to the November 1996 accident.

In this regard, while Argoff indeed testified that the neuroforaminal stenosis noted on the December 1996 MRI constituted a "significant change" from the MRI study performed in March 1995, two observations must be made. First, Argoff defined neuroforaminal stenosis as a piece of bone, also known as osteophyte, "which is actual bone overgrown in response to degenerative changes and injury." Both the March 1995 MRI report and Argoff's August 13, 1996 office notes, which plainly precede the November 1996 "accident," make reference to a defect at C5-6 that was consistent with either a disc bulge or an osteophyte. Additionally, although Gorski's testimony provides the link between the November 1996 accident and claimant's resulting disability, there simply is no evidence in the record to connect the changes noted on the December 1996 MRI to the November 1996 "accident"* and, therefore, no basis upon which to conclude that such accident was the sole cause of claimant's partial disability. Accordingly, the Board's decision is reversed and this matter is remitted to the Board for further proceedings.

Peters, Spain, Carpinello and Mugglin, JJ., concur. Ordered that the decision is reversed, without costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.

---

* Indeed, the WCLJ specifically rejected Gorski's interpretation of the December 1996 MRI study, describing his hypothesis as "pure speculation."